**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KENNETH D. TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 11 C 2647** |
| **v.** | ) | |
| | ) | **Magistrate Judge Daniel G. Martin** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth D. Turner (Turner) seeks judicial review of Commissioner of Social Security denying his application for disability insurance benefits (DIB). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Because the administrative law judge's decision is supported by substantial evidence, the denial of benefits is affirmed.

**I.      Background**

Turner applied for DIB on May 31, 2007, alleging he became totally disabled on January 1, 2006 because of high blood pressure, arthritis in his back, heart disease, and "bad feet." (R. 79, 179). Turner filed a subsequent application for benefits, which was approved with an onset date of October 31, 2009. This action for judicial review thus seeks a period of benefits covering January 1, 2006 through October 30, 2009. Turner's insured status for DIB purposes expired on June 30, 2008, which means Turner had to show that he was disabled on or before that date to be eligible for DIB. (R. 18).

Turner was born on May 23, 1959 and suffers from spinal stenosis with an element of osteoporosis, cardiomyopathy, and pulmonary hypertension. (R. 31-33, 135). Turner completed high school. (R. 46). Turner is able to drive and has past work experience as an over-the-road truck driver, forklift operator, and palletizer. (R. 42-43). He last worked for seven months in 2008

as a PACE driver transporting patients from the hospital to their homes. Turner was fired from his job as a PACE driver for breaking a van's window after locking the keys in the van. (R. 37-38, 40, 41). Turner's DIB application was denied at the initial and reconsideration levels. (R. 73-79, 82-85).

Under the required five-step analysis used to evaluate disability, ALJ Beverly Susler Parkhurst found that Turner had engaged in substantial gainful activity for about seven months since the alleged onset date of January 1, 2006 (step one); his back disorder (degenerative disc disease throughout the lumbar spine with disc protrusions at the L4/L5 and L5/S1 vertebral levels, bilateral foraminal stenosis, facet joint disease at the L4/5 and L5/S1 vertebral levels, and osteopenic changes); cardiomyopathy; and hypertension were severe impairments (step two); but they did not qualify as a listed impairment (step three). (R. 19). The ALJ determined that Turner retained the residual functional capacity (RFC) to perform a full range of light work, i.e., lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 6 out of 8 hours and sit 6 out of 8 hours with no other significant physical limitations. (R. 19-20). Given this RFC, the ALJ concluded that Turner was able to perform his past relevant work as a transport driver (step four). (R. 22). At step five, the ALJ determined that there were jobs that exist in significant numbers in the economy that Turner could perform considering his age, education, and residual functional capacity, relying solely on the Medical-Vocational Guidelines. Id. The Appeals Council denied Turner's request for review on February 24, 2011. (R. 1-5). Turner now seeks judicial review of the final decision of the Commissioner, which is the ALJ's ruling. O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010).

## II.    Discussion

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step sequential inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence, based upon a legal error, or too poorly articulated to permit meaningful review. Hopgood ex rel. v. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In its substantial evidence review, the court critically reviews the entire administrative record but does not reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its own judgment for that of the Commissioner. Clifford, 227 F.3d at 869. An ALJ's credibility determination is generally entitled to deference and will not be overturned unless it is patently wrong. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Turner's claim at step five, finding that Turner retained the RFC to perform a full range of light work. Turner challenges the ALJ's step three finding, RFC finding, adverse credibility finding, and step four finding that he retained the functional capacity to perform his past

job as a transport driver. For the following reasons, the ALJ's decision is affirmed.

**A.    Listing 1.04C**

Turner first disputes the ALJ's determination that his back impairment did not meet Listing 1.04C, which applies to ineffective ambulation resulting from lumbar spinal stenosis with chronic nonradicular pain and weakness. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004). A claimant "must satisfy all of the criteria in the Listing in order to receive an award of disability insurance benefits . . . under step three." Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004).

Listing 1.04C applies to "[d]isorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord" with "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04C. An "inability to ambulate effectively" is one of the criteria specified in Listing 1.04C. Inability to ambulate effectively "means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpart P, App. 1, 1.00B2b1. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. Examples of ineffective ambulation include an inability to walk without a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, and the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. Pt. 404, Subpart P, App. 1, 1.00B2b2.

The ALJ found that Turner did not meet Listing 1.04C because he did not have an impairment that resulted in the inability to ambulate effectively. The ALJ wrote that this listing did not apply to Turner's back condition because "there is no evidence to support a conclusion that he cannot ambulate effectively, as effective ambulation is defined under the Listing (100.B2b)." (R. 19). The ALJ found that Turner has a chronic back condition but that the severe back pain he reported in May of 2006 was an acute exacerbation that eventually resolved. (R. 20, 288). The medical records support this conclusion. By August 30, 2006, Turner reported only intermittent back pain of 3 or 4 on a scale of 10. (R. 20, 284). The ALJ pointed out that a January 22, 2007 physical therapy consultation note states that Turner "ambulates independently [but] shows [a] slightly antalgic gait on left." (R. 14, 273). On March 9, 2007, Turner complained of mild chest pain but no back pain was reported. (R. 14, 20, 268). The ALJ also referred to Turner's April 4, 2007 medical visit, at which time Turner denied any pain and it was noted that Turner's disc disease was "not bothersome now." (R. 14, 263-64). On May 23, 2007, Turner had a nursing appointment to check his blood pressure. (R. 15, 250-51). His blood pressure was normal and the notes reflect that Turner denied any complaints and his pain was assessed at "zero." Id. The ALJ considered treatment notes from August 23, 2007 which reflect that Turner has disc disease with back pain but that it was not currently bothersome. (R. 15, 248-49).

The ALJ further noted Dr. Patil's consultative report dated October 3, 2007, which indicated that Turner's gait was normal and that Turner was able to walk 50 feet normally. (R. 16, 380). The ALJ noted that Dr. Patil reported that Turner was able to tandem walk, heel walk, and toe walk. Id. Dr. Patil specifically reported that Turner did not require the use of an aiding device in order to ambulate. (R. 380). The ALJ relied on the August 12, 2009 treatment note, in which Dr. Sarada Deshpande noted that Turner reported shortness of breath upon walking three blocks but had no complaints of pain, his pain assessment was a "zero," and he was able to ambulate with a steady gait. (R. 15, 446-48). All of this medical evidence cited by the ALJ supports her conclusion that

Turner does not meet the definition of ineffective ambulation. The fact that the ALJ's consideration of medical records is included in a "Summary of the Medical Evidence of Record" section in her decision and woven into her RFC analysis (R. 20), rather than a discussion limited to step three, is insignificant. Rice, 384 F.3d at 370 n.5 (explaining "[b]ecause it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses [in multiple steps], we consider the ALJ's treatment of the record evidence in support of both his conclusions at [multiple steps].").

The ALJ also cited Turner's daily activities and work activity in support of her finding that Turner did not meet Listing 1.04C. (R. 21). At the administrative hearing, Turner testified that he could perform activities like cutting the grass, taking out the trash, dusting, sweeping, and vacuuming. (R. 43-44). Turner can climb up and down stairs at his own pace. (R. 30). Turner also testified that he can walk three blocks before having to rest, albeit at a slower pace. (R. 29). Turner reported being able to walk half a block at normal speed. Id. Turner's activities do not support an "extreme" limitation in his ability to walk as required by Listing 1.04C.

Turner counters that the "ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(2). The Court recognizes that an ability to walk around unassisted does not necessarily mean one can "ambulate" effectively, but the ALJ's finding here was based not only on Turner's activities of daily living but also a lack of objective medical support. There is substantial evidence in the record from treating and examining physicians to support the ALJ's conclusion that Turner does not meet the listing because he can ambulate effectively. Turner's doctors never imposed any limitation on Turner's ability to walk. There is no evidence that Turner required an assistive device to ambulate. None of Turner's examining or treating physicians indicated that Turner could not walk a block at a reasonable pace. Moreover, Turner's 2-year treatment gap from August 2007 to August 2009 supports the ALJ's conclusion that Turner did not

have the "extreme limitation in the ability to walk" necessary to establish the inability to ambulate effectively.[1]

At the administrative hearing, the medical expert, Julian Freeman, M.D., opined that as of at least the middle of 2006, Turner's back impairment met Listing 1.04C.[2] The ALJ rejected Dr. Freeman's assessment that Turner met Listing 1.04C, stating that Dr. Freeman based his opinion on "the claimant's self-reported symptoms and given the claimant's daily activities, his work activity, and the long period absent treatment, these allegations by the claimant are questionable to say the least." (R. 21). The ALJ was not required to accept Dr. Freeman's opinion that Turner met Listing 1.04C. Haynes v. Barnhart, 416 F.3d 621, 603 (7th Cir. 2005) (stating "[w]hile it is true that the regulations require an ALJ to consider opinions offered by medical experts, an ALJ is not bound by those opinions and must evaluate them in the context of the expert's medical speciality and expertise, supporting evidence in the record, and other explanations regarding the opinion."); 20 C.F.R. § 404.1527(e)(2)(i). The ALJ has the responsibility for determining whether a claimant's impairments meet a particular Listing. 20 C.F.R. §§ 404.1526(e), 1527(d)(2). However, the "administrative law judge must explain in the decision the weight given to the opinions of" medical sources. 20 C.F.R. § 404.1527(e)(2)(ii). It is also the responsibility of the ALJ to weigh and resolve conflicting opinion evidence. Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004) (stating "[w]eighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do.").

---

[1] Turner faults the ALJ for relying on his work activity at step three. Turner points to Dr. Freeman's testimony that Turner's work as a PACE driver was not inconsistent with meeting Listing 1.04C because he was not required to walk a block at normal pace as a PACE driver. (R. 48). Even if the ALJ should not have relied on Turner's work activity in support of her step three finding, any such error is harmless because the ALJ's remaining reasons for finding Turner did not meet Listing 1.04C constitute substantial evidence supporting the finding.

[2] Although Dr. Freeman cited Listing 1.04B, the parties agree that he was actually referring to Listing 1.04C.

Turner contends that he meets listed impairment 1.04C because he is unable to walk one block at a normal pace. One of the examples of inability to ambulate effectively is the "inability to walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00B2b2. Dr. Freeman found that Turner could not walk one block at a reasonable pace but cited no evidence other than Turner's testimony. (R. 37, 48). Dr. Freeman offered no specific objective medical findings to support his opinion. The ALJ adequately explained why she rejected Dr. Freeman's opinion with regard to the ability to ambulate effectively. The ALJ discounted Dr. Freeman's opinion that Turner met Listing 1.04C because he relied on Turner's testimony as to his ability to walk at a normal pace. The ALJ stated: "[B]ecause Dr. Freeman based his opinion largely on the testimony of the claimant as to his ability to walk at a normal pace and climb stairs, I accord minimal weight to the opinions expressed by Dr. Freeman in this matter." (R. 21). Since the medical evidence did not support Dr. Freeman's opinion as to Turner's ability to walk at a normal pace and Turner's testimony in this regard, the ALJ properly gave Dr. Freeman's opinion little weight. 20 C.F.R. § 404.1527(c)(3).

Turner claims that there was no opinion evidence in the record to contradict Dr. Freeman's conclusion that Turner met Listing 1.04C. Turner is incorrect. The state agency physicians, Drs. Richard Bilinsky and David Mack, whose opinions the ALJ gave significant weight, reviewed the medical records and concluded that Turner did not meet or equal any listing. (R. 73, 74). These physicians completed Disability Determination and Transmittal forms at the initial and reconsideration levels finding that Turner is not disabled. Id. Completion of the Disability and Transmittal forms "conclusively establish[es] that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004); Steward v. Bowen, 858 F.2d 1295, 1299 (7th Cir. 1988) (holding a doctor's signature on "the specific form" that both doctors "completed and signed 'is proof that a physician designated by the

Secretary has considered the question of whether the claimant's impairments are medically equivalent to an impairment as described in the Listing of Impairments."). The ALJ properly relied upon the opinion of these medical experts at step three. Scheck, 357 F.3d at 700.

### B. Residual Functional Capacity Assessment

Turner next argues that the ALJ's finding of his residual functional capacity was not supported by substantial evidence. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ found that Turner retains the residual functional capacity to perform a full range of light work (i.e., lifting/carrying 10 pounds frequently and 20 pounds occasionally, standing/walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday with no other significant physical limitations). (R. 19-20). The ALJ adopted the opinions of the state agency physicians as the basis for her RFC determination. The ALJ stated: "The undersigned has considered the opinions of the State Agency medical consultants contained in the file with their opinion that the claimant is capable of exertional activity at essentially the light exertional level (Exhibits 6E, 4F)." (R. 21). The explanation given by the ALJ was that "these opinions by the State Agency doctors appear to be consistent with the record as a whole and thus are accorded significant weight." Id.

Turner contends that the ALJ erred in relying on a Report of Contact form completed by a disability examiner (Exhibit 6E) and an Illinois Request for Medical Advice form completed by a state agency physician (Exhibit 4F) because both assessments were based on a Residual Functional Capacity Assessment form not in the record. Exhibit 6E is a Report of Contact form completed by Disability Examiner Kami Peake on October 9, 2007. (R. 196). The Report of Contact form states: "The current RFC, dated 10/09/07, limits Kenneth Turner to light work activity. Although the additional postural and environmental restrictions indicated by this assessment of capacity would limit this range of work, the performance of the majority of jobs at this exertional

level would be possible." Id. The disability examiner concluded that Turner could perform the jobs of injection molding machine tender (rubber good), core extruder (electrical equipment), and racker (bakery products), which employ 726,681 people in Illinois. Id. The disability examiner determined that Turner was not disabled. Id. In the Explanation of Determination form, the disability examiner explained the denial of benefits as follows:

> The medical evidence in file shows that your condition does cause some restrictions in your ability to function. However, you still have the ability to do light work. We realize that your condition prevents you from doing your past job(s), but you are still able to do other types of work which are less demanding.

(R. 79). A Disability Determination and Transmittal Form, signed by Dr. Richard Bilinsky, the state agency physician who reviewed Turner's records, indicates that Turner is not disabled. (R. 73). Box 32 of the Disability and Transmittal form indicates that Dr. Bilinsky completed a form 4734 (the RFC assessment form) on October 9, 2007. Id.

On January 7, 2008, state agency physician Dr. David Mack reviewed Turner's records and completed and Illinois Request for Medical Advice form, in which he affirmed Dr. Bilinsky's RFC Assessment dated October 9, 2007. (R. 74, 381-83). In justifying his conclusion, Dr. Mack observed:

> It was found at the initial level that the BP was 148/84 with no end organ damage. Cardiac was RRR [regular rate and rhythm]. No problems with ambulation were noted. There was limited ROM of the LS spine. Clmnt does not report any changes for better or worse in their condition. There are no new physical or mental limitations noted. They do not report any new illnesses or injuries. They do report a new med provider. However, mer received is prior to the initial decision and does not show any significant changes in the clmnt's condition.

(R. 383).

The Commissioner acknowledges that the Residual Functional Capacity Assessment form completed by Dr. Bilinsky is not contained in the record but argues that a remand is not necessary. There is no explanation offered as to why the RFC assessment form is missing, and it is not listed in the administrative record index. A remand is not warranted, however, because the information

contained on the missing RFC assessment form is ascertainable on the current record. There is evidence from which the ALJ reasonably determined that Dr. Bilinsky limited Turner to light work, despite the missing RFC Assessment form. The Report of Contact form completed by the disability examiner indicates that Dr. Bilinsky's October 2007 RFC Assessment limited Turner to light work activity with certain postural and environmental restrictions. (R. 196). Moreover, Dr. Bilinsky's RFC assessment was supported by another state agency physician's opinion. Dr. Mack clearly affirmed Dr. Bilinsky's findings regarding Turner's physical residual functional capacity, and Dr. Mack's opinion is in the record. (R. 74, 381-83). The ALJ found Turner retained the RFC to perform a full range of light work. (R. 19-20). The ALJ gave "significant weight" to the opinions of the state agency physicians because these opinions were "consistent with the record as a whole." (R. 21). The ALJ's decision was based on substantial evidence, and Turner has failed to show that the missing RFC Assessment form supports his case or undermines the ALJ's RFC assessment. Given this record, it was not error for the ALJ to proceed without having Dr. Bilinsky's RFC assessment form for her review.

Turner next contends that the ALJ's RFC determination is flawed because the ALJ failed to acknowledge the RFC opinion of Dr. Freeman. Turner's argument that the ALJ ignored this evidence is incorrect. The ALJ specifically mentioned Dr. Freeman's RFC assessment in her decision. (R. 18). The ALJ subsequently stated that she accorded minimal weight to the opinions expressed by Dr. Freeman in this matter, which includes his opinion regarding Turner's RFC. (R. 21).

### C.    Credibility Determination

Turner also challenges the ALJ's credibility assessment. "The ALJ's credibility determinations are entitled to special deference but the ALJ is still required to 'build an accurate and logical bridge between the evidence and the result.'" Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010). ALJs are required to "carefully evaluate all evidence bearing on the severity of pain and

give specific reasons for discounting a claimant's testimony about it." <u>Martinez v. Astrue</u>, 630 F.3d 693, 697 (7th Cir. 2011). Further, in evaluating a claimant's credibility, the ALJ must comply with SSR 96-7p and articulate the reasons for the credibility determination. <u>Brindisi v. Barnhart</u>, 315 F.3d 783, 787 (7th Cir. 2003). SSR 96-7p provides that the ALJ's credibility determination must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *4. The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." <u>Id</u>. Turner has not satisfied his burden of showing that the ALJ's credibility determination is patently wrong.

The ALJ provided several reasons for finding Turner's allegations regarding his limitations and symptoms not fully credible. The ALJ's first reason for discounting Turner's testimony was a lack of treatment records supporting disabling back and heart conditions. (R. 20). The ALJ noted that Turner has a chronic back condition but observed that other than an acute exacerbation in May 2006 that eventually resolved, Turner repeatedly reported no back pain. <u>Id</u>. The ALJ then summarized the medical records regarding Turner's heart condition and found that his hypertension is well controlled and he does not have ischemic heart disease. <u>Id</u>.

The second reason given by the ALJ for finding Turner less than fully credible was the "largely unremarkable" results from the complete consultative physical examination performed by Dr. M.S. Patil. (R. 21). Turner objects to the ALJ's characterization of Dr. Patil's findings as unremarkable. Turner relies on Dr. Patil's findings of Turner's reduced ranges of motion in the lumbar spine and a positive straight leg raising test at 30 degrees bilaterally. (R. 379). The ALJ's characterization of Dr. Patil's findings is supported by record. Turner fails to acknowledge that Dr. Patil found the range of motion of Turner's lumbar spine was only somewhat limited. Turner's lumbar spine flexion was 70 degrees (90 is normal), extension was 20 degrees (25 is normal), and lateral flexion was 20 degrees (25 is normal). <u>Id</u>. Furthermore, Dr. Patil noted that Turner had no

tenderness or spasm in the lumbar spine, his gait was normal, and he was able to ambulate normally for fifty feet without the use of an assistive device. (R. 380). Even if "unremarkable" was too strong a word given the positive straight leg raising test and the less than full range of motion in Turner's lumbar spine, the ALJ properly relied on Dr. Patil's findings given that both state agency physicians found Turner was not disabled, despite the findings of Dr. Patil. (R. 79, 383).

Turner argues that the ALJ improperly ignored a favorable physical therapist note from January 2007 in assessing his credibility. Again, Turner's characterization of the ALJ's decision is incorrect. The ALJ specifically discussed the January 22, 2007 physical therapy consultation. (R. 14). The ALJ noted that during that visit, the physical therapist observed that Turner ambulated independently but showed a slight antalgic gait on the left side. (R. 14, 273). The ALJ further noted that upon examination, Turner was found to have moderate tenderness of the left lumbar paraspinal muscle, the left gluteus muscle, and the hamstring as well as reduced range of motion of the lumbar spine. Id. The ALJ pointed out that the manual muscle testing of the hips and quadriceps was 4/5 throughout and Turner's sensation to temperature and touch was intact. Id. The ALJ also noted that at a second physical therapy session a week later, Turner reported feeling better. (R. 14, 271). The physical therapist wrote that Turner had "good rehab potential and show[ed] progression toward goals." (R. 271). Turner was a "no show" for physical therapy sessions on February 5 and February 26, 2007. (R. 14, 269-70). The ALJ then noted that at his April 4, 2007 doctor's appointment, Turner reported that his disc disease was not bothersome and he denied any back pain. (R. 12, 263-65). The ALJ reasonably relied on these findings, among others, to conclude that Turner's severe back pain reported in May of 2006 (R. 288) was "an acute exacerbation that eventually resolved." (R. 20).

Turner also contends that the ALJ placed undue weight on his ability to perform daily activities in assessing his ability to work outside the home. "[I]t is entirely appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility." Roddy v. Astrue, 705 F.3d

631, 639 (7th Cir. 2013). However, the Seventh Circuit has repeatedly "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006). As the Seventh Circuit has recognized, the "pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work." Id.

The ALJ properly considered Turner's numerous daily activities and full-time employment since his 2006 onset date and did not place undue weight on Turner's daily activities and work activity. In her decision, the ALJ described Turner's testimony regarding his daily activities:

> The claimant testified that he lived in a house with his mother. When asked about the activities he does around the house, the claimant testified that he basically cleans and cuts the grass. The claimant stated that he dusts, sweeps, vacuums, and takes out the trash but does not cook as his mother will not allow him to do so. The claimant testified that he is able to bathe and dress himself except when his back "goes out."

(R. 18). Moreover, a January 2007 physical therapy note indicates that Turner's household responsibilities included cleaning, laundry, groceries, and money management. (R. 274). Turner testified that he was able to drive a PACE van in 2008 while taking his medications. (R. 18, 45).

The ALJ found that Turner's daily activities, including cleaning, vacuuming, and cutting the lawn, undermined his claim of disabling limitations. (R. 21). As the Commissioner asserts, these activities necessarily involve the ability to ambulate. The ALJ also considered that Turner worked a full-time job as a PACE driver for seventh months after his alleged onset. Id. Turner's PACE driver job was performed at the heavy exertional level. (R. 42). If someone can do heavy work, he can also do medium, light, and sedentary work. 20 C.F.R. § 404.1567(d). Although the ALJ could have been more specific as to how Turner's activities are consistent with light work, the ALJ did not simply conclude that his activities of daily living translated into an ability to perform full-time work. Turner's daily and work activities were one of several factors that the ALJ considered in

assessing his credibility, along with the objective medical evidence and opinions by consulting and examining physicians. None of Turner's doctors opined that he was unable to perform work at the light exertional level. Given that the ALJ considered Turner's daily activities in conjunction with the entire medical record, the ALJ did not error in concluding that Turner was not fully credible regarding his symptoms and limitations.

Turner suggests that the ALJ failed to consider the following qualifications he made regarding his activities of daily living: he has difficulty dressing himself due to pain and he cares for his personal needs "at a much slower pace" than he used to. (R. 44, 214). While "[a]n ALJ cannot disregard a claimant's limitations in performing household activities," the ALJ here did not ignore Turner's qualifications. Moss v. Astrue, 555 F.3d 556, 562 (7th Cir. 2009). The ALJ twice noted Turner's testimony that he has difficulties dressing and bathing himself when his back "goes out." (R. 17, 18, 44). Turner neglects to mention that when he was asked how often his back goes out, Turner replied that "it doesn't happen often." (R. 61). Turner is correct that the ALJ did not cite the second specific piece of evidence that he identifies regarding his slower pace (R. 214), but ALJs are not required to discuss every piece of evidence. Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013) (stating that "an ALJ's 'adequate discussion' of the issues need not contain 'a complete written evaluation of every piece of evidence.'"). Viewing the record as a whole, the ALJ adequately acknowledged Turner's testimony that he completed his activities, such as walking and climbing stairs, at a slower pace. (R. 17).

Turner next objects to the ALJ's reliance on the reason for his termination from his position as a PACE driver in evaluating his credibility. The ALJ noted that Turner worked full-time as a PACE driver in 2008 (more than two years after his alleged onset date of January 1, 2006) and he was terminated because he broke a vehicle window rather than because of his impairments. (R. 21, 37-38). In assessing Turner's credibility, the ALJ properly considered the full-time position Turner maintained after his alleged onset of disability and the fact that he was terminated from that

position for a reason unrelated to his medical condition. <u>Medhaug v. Astrue</u>, 578 F.3d 805, 816-17 (8th Cir. 2009); <u>Goff v. Barnhart</u>, 421 F.3d 785, 793 (8th Cir. 2005) (holding it is "relevant to credibility when a claimant leaves work for reasons other than [his] medical condition."). Turner explains that he was in constant pain while performing his PACE job, but the ALJ did not find that Turner is pain free. Moreover, an individual does not have to be pain free to have the residual functional capacity to engage in substantial gainful activity. <u>See</u> <u>Stuckey v. Sullivan</u>, 881 F.2d 506, 509 (7th Cir. 1989) (<u>quoting</u> <u>Brown v. Bowen</u>, 801 F.2d 361, 362 (10th Cir. 1986) (stating "disability requires more than mere inability to work without pain.").

Turner also argues that the ALJ improperly discounted his credibility by drawing inappropriate inferences from his gap in treatment. The ALJ properly relied upon a "big gap" in Turner's medical treatment between August 23, 2007 and August 12, 2009 in determining his credibility. (R. 15, 21). <u>Craft v. Astrue</u>, 539 F.3d 668, 679 (7th Cir. 2008) (stating that "[i]n assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment."). The ALJ also noted that Turner was a "no-show" for scheduled physical therapy sessions after January 29, 2007 and was ultimately discharged from physical therapy for non-attendance. (R. 14). An August 2009 treatment record reflects that Turner was seen by his primary care provider when it was determined that he had not ordered his hypertension medication since 2008. (R. 15, 446).

The ALJ noted that Turner is a veteran who was able to seek free medical treatment through the Veterans Administration. (R. 21). The ALJ found, and Turner does not contest, that his failure to pursue treatment cannot be justified by financial reasons. <u>Id</u>. While an ALJ "must not draw any inferences about a claimant's condition" from a gap in treatment unless she has considered any explanations that the individual may provide regarding the infrequent treatment, Turner has provided no explanation whatsoever for the gaps in treatment and medication. Because

Turner has offered no explanation for the treatment and medication gaps, a remand is not required. See Cook v. Astrue, 800 F.Supp.2d 897, 909 (N.D. Ill. 2011) (holding the "ALJ was not required to address hypothetical alternate explanations without support in the record" where the claimant put "forth no plausible alternate explanation" for the treatment gap); Pulli v. Astrue, 643 F.Supp.2d 1062, 1074 (N.D. Ill. 2009) (reversal not required where claimant "was not homeless during a substantial period that he claimed to be disabled but provided no explanation for his lack of medical care during that time.").[3]

### D.    Past Relevant Work

Finally, Turner challenges the ALJ's finding that he could perform his past relevant work as a transport driver.  Turner argues that this work did not constitute past relevant work because it should be considered a trial work period and that it could not be considered past relevant work for the time period prior to the performance of the job.  Turner's claims with respect to step four are without merit.[4]

Turner argues that the ALJ erred in failing to consider whether his work as a PACE driver was a trial work period.  The applicable regulation provides that "[y]ou are generally entitled to a trial work period if you are entitled to disability insurance benefits . . . . " 20 C.F.R. § 404.1592(d)(1). Thus, as the Commissioner argues, "the claimant must *already be disabled* to merit a trial work period."  Hildebrand v. Halter, 2001 WL 199814, at *6 n. 10 (N.D. Ill. 2001), aff'd 29 Fed. Appx. 396 (7th Cir. Feb. 25, 2002).  "The purpose of the trial work period is to allow claimants–who are

---

[3] There is evidence in the record that suggests that Turner did not seek treatment because he did not need treatment.  Turner confirmed at the hearing that when he "got any better, [he] slacked off" at his physical therapy.  (R. 61).

[4] Further, any error that the ALJ may have committed at step four is harmless because the ALJ continued to step five in the sequential analysis, and Turner does not challenge the ALJ's step five finding that Turner could perform jobs existing in significant numbers in the national economy.  Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (stating "[a]lthough the ALJ's step four determination constitutes error, it is harmless in light of the ALJ's alternate finding at step five.").

disabled–a chance to work, without an automatic termination of their disabled status." Id. Turner had not been found disabled prior to his work as a PACE driver, and thus, his reliance on a trial work period is misplaced.

The ALJ also properly found that Turner's work as a PACE driver constituted past relevant work prior to 2008, when he performed it. While "there is a certain logic to the plaintiff's argument about what is 'past' relevant work," Turner's position has been rejected as contrary to the Commissioner's regulations and rulings. Naegele v. Barnhart, 433 F.Supp.2d 319, 325 (W.D. N.Y. 2006); see also Mitchell v. Astrue, 2010 WL 497717, at *3 (M.D. Fla. Feb. 8, 2010), aff'd 393 Fed. Appx. 651 (11th Cir. Aug. 19, 2010). Social Security Ruling 82-62 provides that "[w]hen deciding whether a claimant is disabled under title II or title XVI, the 15-year period is generally the 15 years *prior to the time of adjudication* at the initial, reconsideration or higher appellate level." SSR 82-62, at *2 (emphasis added). In this case, the ALJ's November 4, 2009 decision is the date of adjudication. Turner worked as a PACE driver for seven months in 2008. Turner's work as a PACE driver is within the relevant 15-year period, and the ALJ correctly found that this work constituted past relevant work.

## III. Conclusion

For these reasons and pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Kenneth D. Turner.

**E N T E R:**

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: October 4, 2013**